BERNARD LORY, Appellant-Respondent, v NEIL M. PARSOFF et al., Respondents-Appellants. [793 NYS2d 499]—

In an action, inter alia, to recover damages for legal malpractice, the plaintiff appeals (1) from an order of the Supreme Court, Nassau County (Franco, J.), dated May 1, 2003, which denied his motion pursuant to CPLR 5015 (a) (2), based on newly-discovered evidence, in effect, to vacate a decision of the same court dated March 3, 2003, and (2), as limited by his brief, from so much of a judgment of the same court entered September 18, 2003, as, upon the decision dated March 3, 2003, inter alia, with respect to the first, sixth, and seventh causes of action, and, upon a decision of the same court dated July 11, 2003, with respect to the ninth cause of action, failed to award him damages on his first and sixth causes of action and dismissed the ninth cause of action, and the defendants cross-appeal, as limited by their notice of appeal and brief, from so much of the same judgment as is in favor of the plaintiff and against them in the principal sum of $28,444.65 on the seventh cause of action.

Ordered that the appeal from the order is dismissed, as no appeal lies from an order denying a motion to vacate a decision (*see Coradin v New York City Tr. Auth.*, 3 AD3d 547 [2004]); and it is further,

Ordered that the judgment is modified, on the law, by deleting the provision thereof awarding the plaintiff damages in the principal sum of $28,444.65 on the seventh cause of action and substituting therefor a provision dismissing that cause of action; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, and the seventh cause of action is dismissed; and it is further,

Ordered that one bill of costs is awarded to the defendants.

In January 1996 the plaintiff, as seller, and Toni Amerigo and Paul Pettorino, as purchasers, entered into a Stock Purchase Agreement (hereinafter the SPA) for the transfer of all of the plaintiff's ownership interest in Craftsmen Sound & Security Systems, Inc. (hereinafter the Company). The plaintiff was represented by the defendant, Neil M. Parsoff of the defendant Law Firm of Spanton, Parsoff & Siegel, P.C.

As part of the transactions contemplated by the SPA, the Company and the plaintiff entered into a consulting agreement which contained, among other provisions, a covenant precluding the plaintiff from competing with the Company for a period of three years, commencing on February 9, 1998. In consideration for this restrictive covenant, the Company agreed to pay the plaintiff $250,000 in 12 equal quarterly installments beginning on April 1, 1998, and terminating January 1, 2001. The Company further agreed to secure this obligation by entering into a stock pledge agreement and a security agreement. Amerigo, Pettorino, and the plaintiff entered into a stock pledge agreement whereby the shares of the Company were placed in escrow with the defendants as collateral for the performance by the purchasers of their various obligations under the SPA. In addition, the Company, as debtor, and the plaintiff, as secured party, entered into a security agreement whereby the Company granted the plaintiff a security interest in all of its personal property and trade fixtures to secure payment of the $250,000 it owed to the plaintiff in consideration of the restrictive covenant. The pre-printed language appearing on the security agreement form also stated that the security interest was "to secure any other indebtedness or liability of the [Company] to the [plaintiff], direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising." In connection with the security agreement, the Company executed a standard form UCC-1 Financing Statement (hereinafter the Financing

Statement). Part of the alleged malpractice in this case stems from the defendants' failure to file the Financing Statement and thereby perfect the plaintiff's security interest in the Company's property.

On or about October 1, 1997, the Company allegedly defaulted in making a payment to the plaintiff for quarterly consulting fees pursuant to the consulting agreement. Approximately one month later, in November 1997, the Company filed a voluntary petition under chapter 11 of the United States Bankruptcy Code. The plaintiff retained bankruptcy counsel in order to protect his rights against the Company. In January 1998 the plaintiff regained control of the Company by taking possession of all of its shares pursuant to the stock pledge agreement, and by successfully moving in the Bankruptcy Court, inter alia, to oust Amerigo and Pettorino and to have himself appointed manager of the Company. Thus, by January 16, 1998, the Company was again under the plaintiff's control, and the bankruptcy proceeding was subsequently dismissed in 1999.

The plaintiff commenced this legal malpractice action against the defendants, claiming, inter alia, that the defendants were negligent in failing to perfect his security interest in the Company's personal property and trade fixtures (first cause of action), that his status as an unsecured creditor in the Company's bankruptcy was due to the defendants' failure to perfect his security interest and caused his claims against the Company to become subordinate to secured and priority unsecured claims totaling $69,190.43 (sixth cause of action), and that, because of the defendants' negligence, he was required to retain bankruptcy counsel and incur substantial attorney's fees (seventh cause of action). In his ninth cause of action, the plaintiff alleged that the defendants committed a separate act of malpractice in failing to discover a certain indemnity agreement that the plaintiff executed in 1989.

The defendants' liability in connection with the first, sixth, and seventh causes of action was previously determined by an order granting the plaintiff's motion for summary judgment which was affirmed by this Court with respect to those causes of action (see Lory v Parsoff, 296 AD2d 535 [2002]). Thus, on this appeal, we are called upon only to determine whether the plaintiff established at the trial his entitlement to damages in connection with the first, sixth, and seventh causes of action, and whether the plaintiff established the defendants' liability with respect to the ninth cause of action.

Contrary to the plaintiff's contention, the Supreme Court properly concluded that he failed to establish his entitlement to

damages on his first and sixth causes of action by a fair preponderance of the credible evidence. At the time of the Company's alleged default in October 1997, the only amounts remaining to be paid to the plaintiff under the SPA were for consulting fees for services to be provided by the plaintiff until February 9, 1998, and the $250,000 consideration for the three-year restrictive covenant period, which was to begin upon termination of the plaintiff's employment as a consultant to the Company. Significantly, however, these amounts were not yet due, and there is nothing in the SPA or the related agreements to suggest that, upon the Company's failure to make a timely payment under the consulting agreement, all future sums to be paid under that agreement—including for services and other obligations yet to be performed—would become immediately payable.

It is in this light that the Court must consider the effect of the Company's intervening bankruptcy in November 1997 and the impact, if any, of the defendant's prior failure to perfect the plaintiff's security interest. In November 1997 both the Company and the plaintiff had continuing, mutual obligations under the consulting agreement: the plaintiff was required to continue to perform consulting services until February 9, 1998, and was entitled to be compensated therefor. Upon termination of the plaintiff's employment as a consultant in February 1998, the plaintiff would have been obligated to refrain from competing against the Company for a three-year period, and would have been entitled to compensation therefor. Yet there is no indication in the record that the plaintiff actually performed any consulting services for the Company for which compensation was owed. Moreover, there is no indication in the record that the restrictive covenant ever became effective. To the contrary, it is undisputed that the plaintiff regained full control of the Company on January 16, 1998, *before* the commencement of the restrictive covenant period. Having once again become the sole shareholder and manager of the Company, it is questionable whether the restrictive covenant served any further purpose.

In light of the prospective nature of the obligations that the Financing Statement was intended to secure, it is at best unclear whether the plaintiff would have been in any different position had the defendants properly perfected his security interest. In sum, neither the value of the plaintiff's claim under the consulting agreement nor the value of his security interest (had it been properly perfected) was established at the trial. Accordingly, the Supreme Court correctly determined to award no damages in connection with the first and sixth causes of action.

As to the seventh cause of action, the Supreme Court erred in awarding the plaintiff the principal sum of $28,444.65, representing the amount he paid in attorney's fees to bankruptcy counsel from the date of the petition until he regained control of the Company in January 1998. There is nothing in the record to indicate that the plaintiff would not have retained bankruptcy counsel but for the defendants' failure to perfect his security interest. Alternatively, assuming that the plaintiff would have retained bankruptcy counsel regardless of his status as a secured or unsecured creditor, the trial evidence failed to demonstrate what tasks bankruptcy counsel was required to perform because of the plaintiff's unsecured status which would not have been required had the plaintiff been a secured creditor. From the outset, the plaintiff's strategy in the bankruptcy case was to exercise his rights under the stock pledge agreement in order to regain control of the Company, which he had founded in 1949 and owned until 1997, and preserve its value as a going concern. There is no evidence to suggest that he would have proceeded any differently had the defendants perfected his security interest.

As to the ninth cause of action, the Supreme Court properly determined that the plaintiff failed to establish the defendants' liability thereunder.

The plaintiff's remaining contentions are without merit. Cozier, J.P., Krausman, Mastro and Fisher, JJ., concur.